**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No. 23-cr-00070-JB** |
| | * | |
| **CRAIG D. PERCIAVALLE** | * | |
| **JOSEPH A. RUNKEL** | * | |
| **WILLIAM O. ADAMS** | * | |

**UNITED STATES' OPPOSITION TO MOTION TO COMPEL REVIEW OF SEC
INVESTIGATIVE MATERIAL**

The United States of America, by and through Sean P. Costello, the United States Attorney

for the Southern District of Alabama, and Lorinda I. Laryea, Chief of the Fraud Section, Criminal

Division, Department of Justice (collectively, the "DOJ"), opposes the defendants' motion to compel

the DOJ to review and produce materials generated by the U.S. Securities and Exchange Commission

("SEC"), which are not in the government's possession.  This motion is unsupported by the law in

this and other circuits, and for the reasons stated below, should be denied.

## I.    Background

This case centers around a wire fraud conspiracy conducted by defendants Craig D.

Perciavalle, Joseph A. Runkel, and William O. Adams (hereinafter "Perciavalle," "Runkel," and

"Adams" or collectively "defendants").  The indictment alleges that, from in or around 2013 through

in or around 2016, the defendants were executives at Austal USA, a contractor for the United States

Navy and a subsidiary of Austal Limited, a publicly traded Australian company.  While at Austal USA,

defendants agreed and schemed to make and cause others to make false and misleading statements

about Austal USA's financial performance on one of its Navy shipbuilding programs (the littoral

combat ship or LCS program) and about Austal USA's overall financial condition in order to defraud

Austal Limited's shareholders and the investing public.  [Doc. No. 1. at ¶ 12]  Defendants did this

by intentionally providing false and fraudulent financial information to Austal USA's Board of

1

Directors, Austal USA's independent financial statement auditors, and Austal Limited for dissemination to Austal Limited's shareholders and the investing public.  [*Id.* at ¶ 13]  The scheme to defraud was done to mislead Austal Limited's shareholders and the investing public about Austal USA's financial condition in order to maintain and increase the share price of Austal Limited's stock (through the purchase of shares by shareholders and the investing public at artificially inflated prices) and unjustly enrich defendants and others through the continued receipt of compensation, stock, and other benefits.  [*Id.* at ¶ 14]

The investigations by the United States and the SEC were conducted in parallel and not jointly. The United States conducted a criminal investigation into defendants and Austal for possible criminal fraud charges.  As part of its investigation, the United States executed search warrants, conducted a robust grand jury investigation, including taking witness testimony and issuing subpoenas for records, and conducted approximately 180 witness interviews.  Over approximately five years of investigation, SEC attorneys, who were conducting their own investigation into securities fraud violations, attended certain witness interviews, totaling approximately 45 or 25% of the total interviews conducted by the investigative team.  Conducting such joint interviews reduced the burden on certain witnesses and promoted effective use of government resources.  During the joint interviews, a law enforcement agent took notes; afterwards, the agent documented the interview in a report.  DOJ and SEC attorneys did not take notes during the interviews or write memoranda after the interviews.[1]  Apart from these interviews, the United States' and the SEC's investigations proceeded on parallel but separate tracks.

---

[1] After the reports were finalized, SEC attorneys were provided access to the reports in order to take notes summarizing the contents of the reports for their investigative file.

II.    **The DOJ Did Not Engage in a Joint Prosecution with the SEC, and Should Not Be Compelled to Review SEC Investigative Files Not in its Possession**

A.    <u>Defendants' motion is solely based on limited interactions between the DOJ and SEC in their separate investigations.</u>

Defendants seek an order compelling the United States to review, identify, and produce any *Brady* material in the SEC's possession.   Defendants do not identify the materials in the SEC's file to which they seek access.   In support of this motion, defendants contend that the DOJ and SEC "worked cooperatively and jointly on the factual investigation that resulted in the indictment that issued in this case."   [Doc. No. 200 at 1]   Therefore, defendants assert, the government is obligated under *Brady* to review SEC materials for exculpatory material.   [*Id.* at 2.]    Defendants offer three bases for their assertion that the DOJ and SEC worked jointly: (1) that a federal grand jury returned an indictment in this case on March 30, 2023 and the SEC filed a civil complaint against defendants on March 31, 2023; (2) that both agencies issued routine press releases about their respective matters on March 31, 2023; and (3) that SEC attorneys attended approximately 45 witness interviews with the DOJ over the course of five years.   [Doc. No. 200 at 1-2, 4.]   Defendants thus seek a finding from this Court that two independent federal agencies conducted a joint investigation solely because both criminal and civil investigations resulted in charges around the same time, the agencies issued routine press releases when those matters became public, and because SEC attorneys attended certain interviews with the DOJ.

Defendants' motion ignores that the United States and the SEC engaged in separate fact-gathering, including a robust grand jury investigation conducted by the United States for which   the SEC had no involvement.   The United States also conducted over 100 additional interviews without the SEC.   Furthermore, as the indictment and the materials produced to defendants in discovery show, the grand jury investigation focused on criminal statutory schemes outside of the SEC's jurisdiction.    As discussed below, defendants' motion does not meet the standard in this circuit for finding a joint investigation.    Holding otherwise risks turning nearly every parallel investigation by

3

separate federal agencies into a joint one, while obliterating the tremendous efficiency of interviews attended by both agencies.   This Court should therefore deny this motion.

    B.  <u>Under the *Moon* factors, there was no joint investigation and thus *Brady* does not apply to the SEC materials.</u>

"*Brady* and its progeny apply to evidence possessed by a district's 'prosecution team,' which includes both investigative and prosecutorial personnel."   *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989) (quoting *United States v. Antone,* 603 F.2d 566, 569 (5th Cir. 1979).[2]   "*Brady,* then, applies only to information possessed by the prosecutor or <u>anyone over whom he has authority</u>."   *Id.* (emphasis added).   In determining over whom a prosecutor has authority, "there [is] no per se rule to determine whether information possessed by one government entity should be imputed to another."   *Moon v. Head*, 285 F.3d 1301, 1309 (11th Cir. 2002).   Instead, the relevant inquiry requires "a case-by-case analysis of the extent of interaction and cooperation between the two governments." *Id.* (quoting *Antone,* 603 F.2d at 570).   For example, in *Meros*, the Eleventh Circuit refused to find that a prosecutor in the Middle District of Florida possessed favorable information known to prosecutors in the Northern District of Georgia and the Eastern District of Pennsylvania, holding that "[a] prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence every time a criminal defendant makes a *Brady* request for information regarding a government witness."   866 F.2d at 1309.   In contrast, in *Antone*, the court held that state investigators were part of the "prosecution team" because "the two governments, state and federal, pooled their investigative energies" by participating in a joint investigative task force in which meetings were held, tasks were divided, and state officers were "important witnesses in the federal prosecution." 603 F. 3d at 569.

   In support of their motion, defendants primarily rely on one district court case from the

---

[2] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Southern District of New York, *United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012). As an initial matter, defendants argue that *Gupta* is dispositive to their motion because the court in *Gupta* relied upon the fact that DOJ and the SEC conducted 44 joint interviews and here, DOJ and the SEC conducted approximately 45 joint interviews. But the law in this Circuit does not make a magic number of joint interviews dispositive (nor does the *Gupta* court hold as such). Instead, the test is a "case-by-case analysis." *See Moon*, 285 F.3d at 1309. The defense motion further overlooks the fact that the prosecution team conducted approximately 180 witness interviews in total in this case – meaning that the SEC was present for only 25% of the interviews that have been conducted.

More importantly, defendants also misread the narrow holding in *Gupta*. In *Gupta*, the defendant sought only the disclosure of "some or all of the SEC memoranda and notes" of joint interviews conducted in the investigation. 848 F. Supp. 2d at 493. The court, in ruling on that narrow request, held that the government had "an obligation to review the documents arising from" the 44 jointly conducted interviews, but noted that "[t]his does not mean that all of the documents the SEC prepared and accumulated in its investigation of [the defendant] are part of the joint investigation." *Id.* at 495. Thus, *Gupta* does not support the relief defendants seek; at most, *Gupta* provides that the United States must review any notes or memoranda prepared by the SEC in connection with the approximately 45 joint interviews conducted in this case. But here, unlike in *Gupta*, the SEC did not take any notes or prepare any memoranda of the interviews the SEC attorneys attended. Instead, law enforcement agents working on the criminal investigation with DOJ took notes and then prepared interview reports (both the reports and the notes have already been produced to defendants in this matter). Also unlike in *Gupta*, where SEC attorneys "prepared memoranda that summarized what [they] felt were the relevant parts of the interviews," *id.* at 494, in this case, after the interviews were concluded and the law enforcement agents made their reports, SEC attorneys were granted access to the reports so they could take notes of those reports. In short, the United States has already complied with what the *Gupta* court required.

Defendants' reliance on *Gupta* also ignores that it is an outlier, even within its own judicial district.   *See United States v. Blaszczak*, 308 F. Supp. 3d 736, 742 (S.D.N.Y. 2018) (holding the SEC did not act as "the arm of the prosecutor" where the USAO and the SEC conducted 39 interviews together, the USAO conducted 21 interviews without SEC involvement, and the SEC shared the documents it obtained during its investigation, but the USAO obtained other documents that it did not share with the SEC); *United States v. Collins*, 409 F. Supp. 3d 228, 241 (S.D.N.Y. 2019) (holding that the USAO and SEC did not conduct a joint investigation where the USAO and SEC conducted 16 interviews together (of 60 interviews conducted in total throughout the USAO investigation) and other circumstances suggested "the SEC's involvement in the interviews could not be considered to have been that of a partner."); *United States v. Tournant*, No. 22-CR-276, 2023 WL 5001186, at *7–8 (S.D.N.Y. Aug. 4, 2023) (rejecting defendant's "exceedingly broad request" that the prosecution "conduct a complete search of the SEC's investigative files for exculpatory information" and holding that the USAO and SEC conducted separate investigations where they conducted "a number of joint interviews," shared "a significant number of documents", and "announced their actions on the same day and held a joint press conference"); *United States v. Rigas*, No. 02-CR-1236, 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008), *aff'd*, 583 F.3d 108 (2d Cir. 2009) (declining defendants' request for notes of interviews conducted by the SEC during its civil investigation because there was no joint investigation between the USAO and the SEC); .*United States v. Middendorf*, No. 18-CR-36, 2018 WL 3956494, at *4-5 (S.D.N.Y. Aug. 17, 2018) (holding that the USAO and the SEC had not conducted a joint investigation even though they had conducted joint interviews because "the SEC was not involved in its grand jury presentation, has not reviewed documents gathered by the Government or shared the fruits of its investigation with the Government, and did not participate in the overall development of prosecutorial strategy.")

In the Eleventh Circuit, in performing the required "case-by-case analysis of the extent of interaction and cooperation between the two government[]" entities, the Court examines: whether

there was pooling of investigative energies and resources, joint meetings, actions by other agency personnel taken under the supervision and direction of the federal prosecutor, and any other information suggesting that the SEC functioned as "agents of the federal government under the principles of agency law." *Moon*, 285 F.3d at 1309–10 (quoting *Antone*, 603 F.2d at 570). Applying the *Moon* factors to this case makes clear that there was no joint prosecution: (1) there was no pooling of resources; (2) the SEC participated in only 25% of the prosecution's witness interviews; (3) the SEC was not supervised or directed by the DOJ; and (4) there is no information suggesting that the SEC functioned as agents of the criminal investigative team. Under the *Moon* analysis, defendants' motion fails.

In fact, district courts in this circuit, applying the *Moon* factors to claims strikingly similar to those made by defendants here, have rejected such claims. For example, in *United States v. Slawson*, No. 1:14-cr-186, 2014 WL 5804191, at \*15-16 (N.D. Ga. Nov. 7, 2014), *report and recommendation adopted*, 2014 WL 6990307 (N.D. Ga. Dec. 10, 2014), the defendant filed a motion seeking an order that the government be required to produce evidence in the possession of the SEC, arguing that it appeared that the DOJ and SEC were "conducting a joint or related investigation[]" because the SEC provided information from its investigation to DOJ and because a press release about the criminal matter stated the "FBI will continue to work with its partners" at the SEC. 2014 WL 5804191, at \*15. The court, applying the analysis set out in *Moon*, declined to find that the DOJ and the SEC had engaged in a joint prosecution that required the DOJ to produce materials from the SEC file, finding:

> Defendant's motion is woefully devoid of any allegations, much less evidence, that SEC investigators and personnel were acting at the behest of the federal prosecutors or the FBI or, for that matter, were even involved in the criminal investigation of Defendant. The mere fact that included in the discovery materials were documents originating with the SEC does not support a conclusion that the SEC was part of a joint criminal investigation, that joint meetings were held, or that resources of the SEC were utilized in the criminal investigation under the direction and supervision of the federal prosecutors.

Id. at \*16. Concluding that defendant "failed to make the necessary showing for the court to find

that the SEC personnel were acting on the government's behalf and were, accordingly, part of the prosecution team," the court denied the defendant's motion.    *Id.* (cleaned up).

Other courts have similarly held that the fact that actions were announced in coordination with coordinated press releases does not render investigations joint.    *See Tournant*, 2023 WL 5001186, at *7 ("The fact of a joint press conference or press release is no more indicative of a joint investigation than it is of cooperation between parallel investigations.") (citing *United States v. Alexandre*, 2023 WL 416405, at *6–7 (S.D.N.Y. Jan. 26, 2023) and *United States v. Connolly*, 2017 WL 945934, at *8 (S.D.N.Y. Mar. 2, 2017).    Furthermore, coordination among agencies, standing alone, is not enough to expand the government's *Brady* obligations beyond its own files. "There is nothing improper about the government undertaking simultaneous criminal and civil investigations." *United States v. Stringer*, 535 F.3d 929, 933 (9th Cir. 2008) (reversing district court's dismissal of indictments and approving concurrent DOJ and SEC investigations into securities fraud). Indeed, "[t]he simultaneous prosecution of civil and criminal actions is generally unobjectionable because the federal government is entitled to vindicate the different interests promoted by different regulatory provisions even though it attempts to vindicate several interests simultaneously in different forums."    *FDIC v. MAXXAM, Inc.*, 523 F.3d 566, 592 (5th Cir. 2008).

Defendants also cite to *United States v. Martoma*, 990 F. Supp. 2d 458, 460 (S.D.N.Y. 2014) in support of their argument that the United States has discovery obligations over materials in the SEC's possession, but that case presented far different circumstances.    In *Martoma*, the court found that the USAO and the SEC jointly conducted 20 interviews (without noting how many interviews were conducted separately by the USAO); the SEC shared documents with the USAO, including all documents received from the defendant's employer; the SEC and USAO coordinated their efforts in conducting depositions; the SEC provided the USAO with updates both during and after the deposition of a critical witness, which included information that was relevant to a USAO interview being conducted the next day; they discussed between themselves the evidence obtained as a result of

8

their parallel investigations; and "the criminal complaint against Martoma expressly acknowledge[d] the SEC's participation in this fact-gathering, stating that it [wa]s based, in part, on 'information received from the Securities & Exchange Commission.'"   990 F. Supp. 2d at 460-62.

Perhaps most importantly, in *Martoma*, the defendant's request was specific; defendant requested and the court ordered only a limited set of communications: (1) communications in which a cooperator's counsel made statements that were materially different from the denials of culpability already produced to the defendant; (2) communications that threatened criminal prosecution of either cooperator if he did not implicate the defendant; or (3) communications promising a non-prosecution agreement to either cooperator if he implicated the defendant. 990 F. Supp. 2d at 462.   Here, the defendants' request amounts to an unwarranted fishing expedition where they seek to have the United States review the entire SEC investigative file and produce any and all *Brady* within it, without any basis to believe that any documents in the file contain any exculpatory evidence.   *See Meros*, 866 F.2d at 1309 ("A prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence every time a criminal defendant makes a *Brady* request for information regarding a government witness.").   As noted by the court in *Tournant*, "in *Gupta* and *Martoma*, courts found a joint investigation requiring *Brady* disclosures of specific SEC materials where the defendants made relatively narrow discovery requests that directly pertained to the joint fact-gathering activities of the Government and the SEC. . . . In contrast, courts have treated with skepticism broad requests for orders requiring the Government to search the entire case file of another agency for *Brady* materials."   2023 WL 5001186, at *6; *see also United States v. Velissaris*, 2022 WL 2392360, at *2 (S.D.N.Y. July 3, 2022) ("[J]ointly conducted interviews, standing alone, do not support a conclusion that the SEC and USAO have conducted a joint investigation, particularly where the defendant's request is not limited to information about those interviews.").

## III.  Conclusion

For these reasons, the Court should decline defendants' request to engage in a "fishing expedition" and deny the motion.

Respectfully submitted this 13th day of May 2026.

SEAN P. COSTELLO
UNITED STATES ATTORNEY

LORINDA I. LARYEA
CHIEF, FRAUD SECTION

By: /s/ *Laura Connelly*
Laura Connelly, Acting Assistant Chief
Joshua D. Rothman, Trial Attorney
Criminal Division, Fraud Section
1400 New York Avenue NW
Washington, D.C. 20005
Telephone: (202) 880-0257

By: /s/ *Christopher J. Bodnar*
Christopher J. Bodnar
Assistant United States Attorney
United States Attorney's Office for the
Southern District of Alabama
60 South Royal Street, Suite 600
Mobile, Alabama 36602